# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LEO SHEPARD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 1:14-CV-1166-SMS<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR CALCULATION AND AWARD OF BENEFITS<br><br>(Doc. 20) |

Plaintiff Robert Leo Shepard, by his attorney, Jacqueline A. Forslund, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Titles II and XIV of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.  Following a review of the complete record and applicable law, this Court finds the part of the decision of the Administrative Law Judge ("ALJ") contains legal error is not supported by substantial evidence in the record.

I.      BACKGROUND

   A. Procedural History

In July 2011, Plaintiff applied for disability insurance benefits and supplemental security income. Plaintiff alleged an onset of disability date of December 19, 2010. The Commissioner initially denied the claims on January 13, 2013, and upon reconsideration again denied the claims on July 24, 2012.  On August 21, 2012, Plaintiff filed a timely request for a hearing.

On March 26, 2013, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Trevor Skarda, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 *et seq*.  An impartial vocational expert, Judith L. Najarian ("the VE"), also appeared by telephone and testified.

On April 25, 2013, the ALJ denied Plaintiff's application.  The Appeals Council denied review on June 17, 2014.  The ALJ's decision thus became the Commissioner's final decision. See 42 U.S.C. § 405(h).  On July 25, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff was about fifty years old. He testified that he left high school in eleventh grade to join the Navy. After four years in the Navy, he began working in construction, doing very heavy work, and worked until 2010 when he quit due to back pain. His pain, while taking medication, was regularly around seven or eight out of ten, on a scale of one to ten, with ten being in the emergency room. He took pain medications including cyclobenzaprine, gabapentin, meloxicam, tramadol, and oxycodone. Oxycodone made his thinking slow and stifled his memory. He also uses a TENS unit about once a day for muscle spasms. Typically, he took two tramadol four times a day, and oxycodone twice a day. Without medication, he could not go anywhere. Plaintiff did not take any medication or receive counseling for mental health needs.

Plaintiff testified that he was usually "wiped out" and did not sleep well at night. On some days he was able to do some housework, like vacuuming, doing one room at a time and resting. Occasionally, he would present to the emergency room and receive a Toradol shot from the doctor. Plaintiff was able to drive but he usually did not because he did not think clearly enough. About once a week he would drive to the store a block away. Plaintiff was married and lived with his wife. He would accompany her to the store and try to help out. He also would lie down and elevate his feet in a recliner to relieve pain for about four hours a day.

Plaintiff also testified that he would visit his daughter and grandkids about once a month in Mariposa, approximately an hour and fifteen minutes away by car. The drive was painful for him, but he would take a pain killer and continue.

Plaintiff indicated in his exertion questionnaire (Exh. 3E) in August 2011 that his pain medication made him drowsy. On a normal day would get up, bathe, make breakfast, rest, have lunch, do a few chores, rest, have dinner, clean up, and rest. He could walk two hundred yards in twenty minutes before needing to rest. He could lift and carry light things for short periods of time and needed to rest. He cleaned his own home by doing laundry, dishes, vacuuming, and mopping, but these things took all day and he could only work about two hours at a time, resting about as much as working. Some days he would lie down all day. He also indicated that he could drive a car about thirty miles at a time.

Plaintiff completed a function report (Exh. 9E) in June 2012, which indicated similar limitations. He also added that he fed and cleaned up after his pet cat, he had visitors from upstairs, and he read and watched television every day.

C. <u>Relevant Medical Record</u>

Plaintiff sought medical attention for his back pain in about 2009. Medical imaging in 2011 reflected narrowing of disc space and disc degenerative changes. In 2012, Plaintiff had normal bone density, no fractures, and very mild dextroscoliosis at the thoracolumbar junction. His disc height looked mostly normal. AR 572, 653. Physical examinations occurring in 2011 and 2012 revealed mild muscle spasms, diminished range of motion, abnormal gait, and tenderness in the spine. The record reflects regular treatment and medication refills during 2011 and 2012.

J. Frankel, M.D., reviewed Plaintiff's medical record in October 2011 and opined that Plaintiff could lift and carry twenty-five pounds frequently and fifty pounds occasionally, stand and walk for six hours, and sit for six hours in an eight-hour work day. C. De La Rosa, M.D., reviewed Plaintiff's file and concurred with Dr. Frankel's opinion in July 2012.

Fariba Vesali, M.D., performed an orthopedic consultative examination in December 2011. He observed that Plaintiff was able to walk and sit comfortably, take his shoes off and on, and had normal gait and balance. He found that Plaintiff's range of motion in the lumbar spine was diminished, with tenderness. He diagnosed chronic low back pain likely secondary to degenerative disc disease of the lumbosacral spine. However, he opined that Plaintiff had no physical limitations.

Richard J. Palmer, Ph.D., conducted a mental consultative examination in December 2011. He observed that Plaintiff had a slow, awkward gait and appeared uncomfortable, but was cooperative and interacted appropriately. Plaintiff had good attention and memory and fair concentration. He had a good ability to perform simple mathematical calculations. His judgment and insight were poor, his mood and affect were depressed, and his thought process and content were normal. Dr. Palmer diagnosed major depressive disorder and attention hyperactivity disorder. He opined that Plaintiff could perform simple and complex tasks, accept instructions from supervisors, interact with coworkers and the public, and perform work activities on a consistent basis. He opined that Plaintiff had a poor ability to handle normal work-related stress and a fair ability to maintain regular attendance and complete a normal workday or workweek without interruption from psychiatric symptoms.

S. Kahn, M.D., reviewed Plaintiff's file in January 2012 and opined that Plaintiff could perform simple unskilled one-two step work, adapt and relate to coworkers and deal with changes. H. Biala, M.D., reviewed Plaintiff's file and concurred with Dr. Kahn's opinion.

Roland Mawis, M.D., began treating Plaintiff for back pain in July 2012. At this time, Dr. Mawis noted that Plaintiff had chronic low back pain and was found to have degenerative disc disease. He noted that Plaintiff's pain was stable with analgesics gabapentin and tramadol, Flexeril as needed for muscle spasms, meloxicam at night when pain is severe, and Vicodin as needed. Dr. Mawis continued Plaintiff on the same medications. In September 2012, Plaintiff called and stated that Vicodin and tramadol did not provide relief. Dr. Mawis administered a Toradol shot, increased Plaintiff's gabapentin dosage, and continued Vicodin and use of the TENS unit. In December 2012, Plaintiff went to the ER for back pain, where he was given pain meds including a Lidoderm patch and an oxycodone prescription. A few days later, he received another Toradol injection. Dr. Mawis changed Plaintiff's Vicodin prescription to Percoset. Dr. Mawis ordered x-rays, which revealed very mild dextroscoliosis.

In March 2013, Dr. Mawis opined that Plaintiff was precluded from performing any full-time work at any exertional level. He opined that Plaintiff could stand and walk for up to two hours in an eight-hour work day, fifteen to twenty minutes at a time, sit for up to two hours in an

4

eight-hour workday, fifteen to twenty minutes at a time, and needed to lie down for two to three hours during an eight-hour workday. Plaintiff must avoid straining his back and could not crawl, bend, or kneel. Dr. Mawis supported this opinion with Plaintiff's observed need to switch position to standing after ten minutes of sitting, dextroscoliosis, Plaintiff's muscle spasms and decreased back flexion, and an x-ray showing generative disc changes.

D. Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as stone mason/granite setter (DOT # 861.381-038, medium, SVP 7) and marble finisher (DOT # 861.664-010, very heavy, SVP 7). The ALJ asked the VE to assume a hypothetical person with the same age, education, and work experience as Plaintiff, who was limited to light work, may occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, frequently balance, occasionally stoop, kneel, crouch and crawl, must avoid concentrated exposure to excessive vibration and concentrated exposure to operation and control of dangerous, moving machinery as well as unprotected heights. The ALJ stated that that hypothetical person could not perform Plaintiff's past work but asked if there was any other work the hypothetical person could perform. The VE opined that such an individual could perform other work existing in significant numbers in California and the U.S. and gave two examples: order caller (DOT # 209.667-014, light, SVP 2), lab sample carrier (DOT # 922.687-054, light, SVP 2).

The ALJ then directed the VE to assume a second hypothetical person who had the same limitations as the first but was additionally limited to simple, routine and repetitive tasks. The VE opined that the second hypothetical person could perform the same jobs as the first.

The third hypothetical person presented by the ALJ was required to lie down two to three hours a day and/or elevate his legs. The fourth hypothetical person could sit two hours and stand or walk two hours in an eight-hour day. The fifth hypothetical person was unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for a forty-hour work week or an equivalent work schedule. The sixth hypothetical person was only able to stand or walk for fifteen to thirty minutes without lying down. The VE agreed that the third through sixth hypothetical persons were precluded from all work.

Plaintiff's attorney proposed a seventh hypothetical person who had the same limitations as the first hypothetical person but could only lift ten pounds. The VE opined that this person would not be able to perform light work as the first hypothetical person could. The VE stated that she would "have to look at sedentary at that point" and did not elaborate as to whether this hypothetical person could perform sedentary work.

### E. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had degenerative disc disease of the lumbar spine with radiculopathy, anxiety, major depressive disorder, and attention deficit hyperactivity disorder, which significantly limited his ability to perform basic work activities. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to perform light work but could never climb ladders, ropes, or scaffolds; only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and frequently balance. He further limited Plaintiff to avoiding concentrated exposure to excessive vibration, operational control of dangerous moving machinery, and unprotected heights. He limited Plaintiff to simple, routine, and repetitive tasks. The ALJ concluded that Plaintiff was unable to perform his past relevant work, but that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff was "not disabled."

## II.   LEGAL STANDARD

### A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the

claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. <u>Standard of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper

1  legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ
2  applied the proper legal standards and the ALJ's findings are supported by substantial evidence,
3  this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov*
4  *v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial
5  evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of*
6  *Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind
7  might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
8  2005). Where the evidence as a whole can support either outcome, the Court may not substitute its
9  judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

10  Plaintiff raises several issues on appeal. Plaintiff contends that the ALJ erred in his RFC
11  assessment by improperly discrediting the opinions of his treating physician Roland Mawis, M.D.,
12  nurse practitioner Ms. Rhoads, and examining psychologist Dr. Palmer. Plaintiff also argues that
13  the ALJ improperly rejected Plaintiff's subjective symptom testimony and third party lay witness
14  testimony.

### III.    PHYSICAL RESIDUAL FUNCTIONAL CAPACITY

Plaintiff's treating physician, Dr. Mawis, opined that Plaintiff was precluded from performing any full-time work at any exertional level. The ALJ gave this opinion little weight because it was inconsistent with the absence of strong positive findings concerning Plaintiff's spine in objective medical evidence, the lack of more aggressive treatment or surgical intervention, and Plaintiff's "relatively normal" activities of daily living which indicate "considerable physical capacity." Plaintiff argues that it should have been afforded greater weight because Dr. Mawis was a treating physician entitled to deference, and because the ALJ did not explain specifically what objective evidence did not support Dr. Mawis' opinion, what evidence showed that Plaintiff's treatment was conservative, or what daily activities contradicted any specific medical evidence.

#### A. Weighing Medical Evidence

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to

perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id*. The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The controverted opinion of a treating or examining physician can only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *citing Magallanes*, 881 F.2d at 752. The ALJ must set forth a detailed and thorough factual summary, address conflicting

clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

B. Discussion

Dr. Mawis' opinion was contradicted by consultative examiner Dr. Vesali, and reviewing physicians Drs. Frankel and De la Rosa. The ALJ gave these three opinions little weight because they overstated Plaintiff's physical capacity and were inconsistent with positive clinical signs concerning Plaintiff's spine and their opinions did not adequately consider medication side effects, including drowsiness.  Dr. Mawis' contradicted opinion may be rejected for specific and legitimate reasons supported by substantial evidence in the record.

*1. Objective Findings*

The ALJ found that the absence of strong positive findings concerning Plaintiff's spine contradict Dr. Mawis' opinion that Plaintiff could not perform any full-time work. In the ALJ's RFC discussion, he sets forth a detailed summary of Plaintiff's medical history, including objective findings. He discussed the objective findings concerning his spine, including narrowed disc space and degenerative disc changes. He also noted that diagnostic images of his spine in December 2011 were unremarkable. The ALJ discussed the diminished range of motion and tenderness in the back and spine during physical examinations in 2011 and 2012. A nerve conduction study done in 2011 revealed no abnormalities. The ALJ found that the objective medical findings had been largely mild. The record supports this finding.

*2. Conservative Treatment*

The ALJ found that Dr. Mawis' opinion was inconsistent with the lack of more aggressive treatment or surgical intervention. This finding is not supported by substantial evidence in the record. Prior cases in the Ninth Circuit have found that treatment was conservative when the claimant's pain was adequately treated with over-the-counter medication and other minimal treatment. *E.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)(treatment was

10

conservative where claimant took only Ibuprofen to treat his pain); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)(claimant's favorable response to physical therapy, anti-inflammatory medication, a TENS unit, and lumbosacral corset was conservative treatment); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)(physical ailments treated with over-the-counter pain medication was conservative treatment); *cf. Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010)(doubting whether "copious amounts of narcotic pain medication" with occipital nerve blocks and trigger point injections was conservative treatment). Here, Plaintiff's back pain was treated with several prescription pain medications. To manage his pain, Plaintiff was taking cyclobenzaprine, gabapentin, meloxicam, tramadol and oxycodone. He testified that he took two tramadol four times a day and oxycodone twice a day. The record reflects consistent refilling of his medication. He also uses a TENS unit once a day for muscle spasms and sometimes goes to the emergency room for pain and receives a Toradol shot. He noted that the medications made him "think real slow." The record reflects substantial medical treatment and heavy reliance on pain medication. Hence, the record does not support the ALJ's finding that Plaintiff's treatment was conservative or that the lack of surgical intervention or other invasive or aggressive treatment contradicts Dr. Mawis' findings.

*3. Activities of Daily Living*

The ALJ also found that Plaintiff's activities of daily living indicate considerable physical capacity, which is inconsistent with Dr. Mawis' opinion. The ALJ noted that Plaintiff's activities of daily living include household chores such as preparing simple meals, doing laundry, washing dishes, cleaning, and vacuuming. He occasionally drives and socializes at home. He cares for a pet cat and reads and watches television daily.

Plaintiff testified and stated at various times throughout the record that these indeed are some of his activities of daily living. However, the ALJ's characterization of his daily living is imprecise. Plaintiff noted in his exertion questionnaire and function report that he is able to do some household chores but it takes him all day, working for about two hours at a time and requiring breaks. He stated that he rested about as much as he worked. He noted that he is able to drive a car but only for short distances or thirty miles at a time. He is able to prepare simple meals

1  but only meals that take ten to twenty minutes to prepare. He also testified that he needs to lie
2  down and elevate his legs for four hours a day, and that he could only walk for twenty minutes
3  before needing to rest. He stated that on a normal day, he eats, bathes, does a few chores, and
4  rests. On some days he lies down all day. On other days he is able to take a short trip to the store,
5  or a longer trip to visit his daughter. Nothing in the record regarding Plaintiff's daily activities
6  contradicts Dr. Mawis' opinion that Plaintiff can stand and walk for no more than two hours, sit
7  for no more than two hours, and must lie down for two to three hours in an eight-hour work day,
8  and is therefore precluded from any full-time work. Hence, the ALJ's finding that Plaintiff's
9  activities of daily living contradict Dr. Mawis' opinion is not supported by the record.

   *4. Credit-as-True*

   Two of the ALJ's three reasons for rejecting Dr. Mawis' opinion are not supported by the record. It does not appear that the mild objective findings, in this case which involves chronic pain and heavy medications despite mild objective findings, are a sufficient reason to reject Dr. Mawis' opinion. Therefore, the ALJ did not give specific and legitimate reasons supported by substantial evidence in rejecting Dr. Mawis' opinion.

   Under the "credit-as-true rule," which was recently reaffirmed and clarified in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the district court may remand with instructions to calculate and award benefits when:

   > (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
   >
   > (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
   >
   > (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

   *Garrison v. Colvin*, 759 F.3d 995, 1095 (9th Cir. 2014). However, there is flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

   Here, the three *Garrison* elements are met. The record has been fully developed and further administrative proceedings would serve no useful purpose. The VE testified that a person who

could stand and walk for two hours and sit for two hours in an eight hour work day would be precluded from all work. As discussed, the ALJ has failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mawis' opinion. If Dr. Mawis' opinion were credited as true, the ALJ would be required to find Plaintiff disabled on remand. The record as a whole does not create serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. Accordingly, the action should be remanded for calculation and award of benefits. Because this case will be remanded for calculation and award of benefits based on crediting Dr. Mawis' opinion as true, discussion of the remaining issues is not necessary.

IV.     ORDER

For the foregoing reasons, it is hereby ORDERED**:**

1. that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security (Doc. 1) is GRANTED.
2. pursuant to sentence four of 42 U.S.C. § 405(g), that the matter is REMANDED for further calculation and award of benefits; and,
3. the Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Robert Lee Shepard and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 29, 2015**              **/s/ Sandra M. Snyder**
                                                                        UNITED STATES MAGISTRATE JUDGE